Timothy N. Mathews
Benjamin F. Johns
Zachary P. Beatty (*pro hac vice to be sought*)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone (610) 642-8500
Facsimile (610) 649-3633
tnm@chimicles.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANN ACOSTA, FARRAH GILBERT, and DANIEL SCHWARTZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS USA, INC.,<br><br>Defendant. | Civ. A. No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs JoAnn Acosta, Farrah Gilbert, and Daniel Schwartz (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, for their Class Action Complaint against Defendant LG Electronics USA, Inc. ("LG" or "Defendant") allege the following based on personal knowledge as to

themselves and their own acts, and information and belief as to all other matter based upon, *inter alia*, the investigation of counsel, which included publicly available information, websites, and forums.

## I.    INTRODUCTION

1.     This lawsuit seeks to recover damages sustained by consumers arising from a manufacturing defect that causes the tops of most LG top-loading washers to rust within months or a few shorts years of purchase, which ruins clothes due to rust stains and paint chips, rendering the washers useless. Washing machines are expensive appliances, which should have a useful life of at least a decade or more. LG, however, defectively manufactured the metal tops of their machines such that they begin to excessively rust within a short period of time.

2.     The rust initially develops around the plastic bleach dispenser, which is located on the top corner of the top of the washer, just beneath the lid. (See photos below.) The bleach dispenser is made of plastic and embedded into the metal top. Upon information and belief, the metal used in the tops are of poor quality and/or inadequately painted or sealed. Hundreds or thousands of consumers have reported that the washer tops develop rust around the bleach dispenser within just months or a few short years of purchase. Once it begins, the rust inevitably spreads throughout the top of the washer to the point that rust seeps into the laundry bin and stains clothing during the wash cycle.

3.     The rust inevitably renders the washers useless of their intended purpose—cleaning soiled clothing. Below are photographs of just few examples of the extensive rust that renders the washers useless:



*LG Electronics – LG Top Load washer Rusting Under Lid*, PISSED CONSUMER (Nov. 29, 2016), https://lg-electronics.pissedconsumer.com/lg-top-load-washer-rusting-under-lid-20161129963701.html.



*LG Rust Around Bleach Dispenser*, COMPLAINTS BOARD (Aug. 13, 2018), https://www.complaintsboard.com/complaints/lg-rust-around-bleach-dispenser-c923369.html



*LG Electronics - LG Wave Force washer Rusting*, PISSED CONSUMER (Oct. 5, 2017), https://lg-electronics.pissedconsumer.com/lg-wave-force-washer-rusting-201710051110646.html

4.    Laundry washers are major home appliances. Consumers spend hundreds or thousands of dollars in order to purchase a washer, and they expect their washer to last beyond a few short years. In fact, LG's representatives state that LG washers have an expected useful life between ten and fifteen years.

5.    Plaintiffs and other consumers are surprised to find that after a few years, their new LG washers rust so extensively that the rust seeps into the washing bin and soils their laundry. LG provides a warranty on its washers. When consumers contact LG about rust, however, LG denies their warranty claims because LG characterizes the Defect as "cosmetic" or blames it on the consumers' inadequate care of their washers.

6.    The Defect, however, is not merely cosmetic, and it is not caused by

inadequate care by consumers. The washers initially develop rust around the plastic bleach dispenser due to poor paint and sealing. Given that the washers are subject to wet, humid conditions, LG knew or should have known to manufacture the washer tops in a manner that is resistant to rust, but it did not. LG inadequately painted or sealed the metal tops from the normally expected moisture and humidity that results from using the washer in its intended manner. After the rust takes root around the bleach dispenser, it quickly spreads throughout the top of the washer. The rust becomes so pervasive that reddish-brown liquid, paint chips, and other debris drain into the washing bin during wash cycles and soil laundry. Thus, the Defect affects the washer's ability to perform its ordinary purpose, and the Defect is not merely cosmetic.

7.      Nor is the Defect the fault of the consumer. Regardless of the level of care or cleaning, the washer develops excessive rust during ordinary, normal household use.

8.      The Defect in this case is one of materials and/or workmanship (i.e., a manufacturing defect). Upon information and belief, LG utilizes materials and coatings in the assembly of the washers that are of substandard quality resulting in rust that begins to form almost immediately and within just a few years renders the washers useless. Specifically, as detailed below, the top portion of the washer is either manufactured with inadequate rust-resistant materials (such as substandard

steel or inadequate paint, primer, or coating) or is not treated with a rust-preventative. Inadequate materials are unduly susceptible to the known risk of rust in a washing machine—a machine that inherently needs water to perform its essential function.

9.    LG impliedly warrants that its washers are of merchantable quality. LG's washers, however, were not of merchantable quality when sold to consumers because they contain a latent manufacturing defect that causes the washers to be unfit for the ordinary purposes for which they are used. Additionally, washers that are not adequately rust resistant when used in the ordinary manner do not pass without objection in the trade.

10.    LG expressly warrants its washers against manufacturing defects. Yet, LG routinely denies warranty requests to repair or replace the defective parts and/or washers that have rusted.

11.    LG has breached its implied and express warranties causing Plaintiffs damages, and, thereby, LG has also violated the Magnusson-Moss Warranty Act.

12.    Moreover, by virtue of a plethora of consumer complaints online and directly to Defendant, LG has known of this Defect since at least 2012. Despite its superior and exclusive knowledge, LG did not disclose the Defect to Plaintiffs or any other consumers prior to their purchase of its washers. If LG had disclosed the Defect, Plaintiffs and class members would not have purchased the washers or

would have paid substantially less for them.

13.     LG's conduct and omissions in connection with its marketing and sale of its washers, as described herein, violates the common law, California Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200 – 17210), California False Advertising Law (CAL. BUS. & PROF. CODE §§ 17500 – 17509), California Consumers Legal Remedies Act (CAL. CIV. CODE §§ 1750 - 1785), and Missouri Merchandising Practices Act (MO. REV. STAT. §§ 407.010 - .309).

## II.    JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendant because Defendant's executive office is in New Jersey and Defendant has purposefully availed itself of the privilege of conducting business in the State of New Jersey.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because LG maintains executive offices in this District.

### III.    FACTUAL ALLEGATIONS

**A. The Defect**

17.    LG manufactures, among others, top-loading washers that are intended to clean dirty clothing and other articles of laundry. The laundry is placed in from the top into the tub, the detergents are added, and the lid is closed before use.

18.    Upon information and belief, LG's washers share a similar structural design but are composed of substandard materials that cannot maintain normal household use.

19.    LG's top-loading washers are designed with two bins that comprise the tub where the laundry is placed. The outer bin is made of plastic, waterproof, and designed to contain water. The inner bin (or drum) is made of stainless steel with holes in it to allow water to move between the outer bin and the inner bin.

20.    The tub is set within in a metal housing. The metal housing also has two distinct parts. First, there is the cabinet that contains the tub. Second, there is a main top that rests on top of the cabinet and can also be removed from the cabinet.

21.    The main top has several components: the lid, detergent and fabric softener dispensing tray, liquid bleach dispenser, and control panel.

22.    The main top has a detergent dispensing tray (or dispenser box) located underneath the lid and directly beneath the control panel. This tray is where

the user places detergent and liquid fabric softener.

23.    The main top also has a separate liquid bleach dispenser (or bleach box) that is located on the top left of the washer underneath the lid. The bleach dispenser is made of plastic but is embedded into the metal main top. The below image depicts LG top-load washers and their parts:



Owner's Manual for WT7600HKA, WT5480CW, at 7, and WT5070CV at 8.

24.    LG's top-loading washers, however, suffer from a defect of materials because the main top is manufactured with substandard materials that are not adequately rust resistant and/or not treated with any rust-preventative. The rust begins around the bleach dispenser and then spreads so extensively that the defect renders the washer unable to perform its intended function of cleaning laundry.

25.    Of course, in order to effect a wash cycle and properly clean the laundry, washers use water, detergent, and bleach.

26.    LG, a long-time, major washing-machine manufacturer, knows that it must manufacture its washers with adequate materials that are rust resistant.

27.    Rust (i.e., iron oxide) is a form of corrosion. It is a product of a reduction-oxidation reaction between iron and oxygen, and it is exacerbated by the presence of water. Without adequate protective measures, the combination of water or air moisture, oxygen, and an iron alloy will chemically react and result in corrosive rust.

28.    Rust-preventative measures (e.g., paints, sealants, and primers etc.) can be used to prevent rust. But, if the protective measure is inadequate or incomplete, rust can attack an initially weak spot and spread throughout and, thus, entirely negate the rest-preventative measures.

29.    This specifically happens when rust has an initial opportunity to form at some type of weak location that is not adequately protected. Once the rust initially starts, it has the ability to expand the metal and destroy the protective coatings. Thus, the inadequately or incomplete rust-preventative materials leave even the protected metal susceptible to rust.

30.    In LG's washers, the weak spot is around the embedded plastic-bleach dispenser. The rust initially develops there because either: (1) the rust-preventative measure on the main top is substandard, or (2) a portion of the area around or beneath the bleach dispenser does not have adequate rust-preventative painting or

coating. This is a manufacturing defect in materials, workmanship, or both.

31.    When used in the ordinary manner, water, which is sprayed and dumped into the tub, splashes or mists onto the main top of the washer. Thus, as LG knew, water or moisture coats the main top beneath the lid. Due to the defect, however, within an unexpectedly short period of time, the main top rusts around the bleach dispenser.

32.    Once the rust takes root around the bleach dispenser, it then spreads underneath the main top—unknown to most washer owners. It then spreads throughout the remainder of the main top.



*LG Electronics - LG washer WT5070CW*, PISSED CONSUMER (May 27, 2017), https://lg-electronics.pissedconsumer.com/lg-washer-wt5070cw-201705271052916.html.



David Hall (@myprism83), TWITTER (Oct. 6, 2018, 9:42 AM),
https://twitter.com/myprism83/status/1048614533525254145



*LG Electronics - Rusted, Busted, and Untrusted LG washer*, PISSED CONSUMER (Dec. 27, 2017), https://lg-electronics.pissedconsumer.com/rusted-busted-and-untrusted-lg-washer-201712271156615.html



*LG Electronics - RUST BUCKET*, PISSED CONSUMER, https://lg-electronics.pissedconsumer.com/rust-bucket-201802191193332.html (last visited Oct. 30, 2018) ("Within the first year I had a small rust spot appear near the bleach dispenser within 18 months another appeared on opposite side.")



*Id.*

33.    LG's materials are defective in that LG uses substandard materials—such as weak metals or ineffective rust preventatives—in the manufacturing process that are not adequate to protect against the known harm from rust. The Defect and the inevitable rust, however, are not the fault of the consumer.

34.    On LG's website, for instance, LG claims that rust around the dispenser area "is usually the result of detergent residue that is not wiped clean. The detergent can erode the finish if not cleaned immediately. When filling the dispenser, be sure not to overfill or spill the detergent or other additives. The dispenser area should only be cleaned with warm water and a soft cloth."[1] It is not clear, however, whether this statement is discussing the bleach dispenser or the detergent dispenser. Detergents would not be used near the bleach dispenser.

---

[1]    *Help Library*, LG, http://www.lg.com/us/support/product-help/CT10000010-1337710487924-others (last updated May 5, 2018).

Moreover, many consumers report that rust forms around the bleach dispenser even though they have never used bleach.

35.    Despite LG's admonitions, upon information and belief, the rust develops regardless of overflow or spill of bleach or detergent because of the nature of the Defect. No amount of maintenance, cleaning, or non-spilling, or wiping away of detergents would prevent the Defect.

36.    Additionally, the Defect is not cosmetic. Rather, the rust excessively corrodes the metal, spreads throughout the main top of the washers, and inevitably flows into the washing bin soiling laundry. Thus, the Defect affects the washer's ability to perform as intended and cannot be dismissed as merely cosmetic.

37.    LG states that a consumer can expect that an LG washer has a useful life between ten and fifteen years.[2]

38.    LG's washers, however, rust prematurely rendering the washers unfit for their ordinary purpose within, at most, a few years after purchase.

**B. LG's Knowledge of the Defect**

39.    Disappointed and frustrated consumers of LG washers—who have

---

[2] Kimberly Janeway, *How to Make Your washer and Dryer Last*, CONSUMER REPORTS (Feb. 23, 2018), https://www.consumerreports.org/laundry-cleaning/how-to-make-your-washer-and-dryer-last/ ("'The life cycle of an LG washer or dryer is around 10 to 15 years,' says Taryn Brucia, director of public relations for LG."); *see also* Michael Guhde, FACEBOOK (Feb. 28, 2017), https://www.facebook.com/LGUSA/posts/1245694412146757 (where LG Electronics USA posted a comment stating that "The average life cycle of an LG washer or dryer is around 10 to 15 years").

experienced the same Defect as Plaintiffs—have reported this problem to LG as early as 2012. For example, six years ago (i.e., 2012), one consumer posted directly on LG's website that her system was a "Rusting piece of junk" and that at "less than a year old and already [it] started to rust around the bleach dispenser. . . . I will never by [an] LG product again NO SUPPORT NO HELP NO GOOD." Five years ago (i.e., 2013), one consumer posted directly on LG's website that she was "very disappointed that my 1 1/2year old machine is rusting around the bleach dispenser . . . ." Upon information and belief, hundreds, if not thousands, of consumers have complained to LG about this defect since 2012, as evidenced by the number of complaints that appear online under a search for "LG washer rust." A small sampling of some of these complaints is provided below.

## Customer Review

 LG Rust Bucket

By Rabtexas on January 10, 2012

"Stay away from this machine, and I would imagine the company in general. First experience with LG. I have owned this top load washer for 1 year and 3 months. I just noticed that there is rust coming out around the bleach tray. I just got off the phone with LG and the warranty oddly enough, ended 3 months ago. My first and last experience with LG. I find it hard to believe that I replaced a 20 year old Maytag (no rust) with a LG (supposedly top of the line) that is rusting in just over one year. If you own this, pull out the plastic liquid bleach dispenser (easy to do), and inspect for rust around the edges...it will be there. Hopefully you bought this under a year ago. I assume that all of their products have the same paint/clear coat/construction... so I would purchase another brand in any product that has metal and paint. Can't wait to see where the rust comes out next. Very dissappointed!!! Goodbye LG..."

22 people found this helpful

Helpful    ▾ 4 comments    |    Report abuse    |    Permalink

Comment

40.    On April 17, 2012, a consumer posted on Consumer Affairs regarding her LG washer:[3]



  **Tracey of Lorton, VA**

Original review: April 17, 2012

I purchased a $900 LG washer 14 months ago. I also purchased the PSP plan. The bleach port is rusting away and getting rust on the clothes! The water and pressure is fine. The PSP plan won't cover this. I called LG and they gave me a hard time, but I demanded something so they allowed me to email the receipt from HHGregg and they will consider sending someone to look at the rust. They decided no and instead, suggested I purchase another plan that covers this problem. I didn't realize we needed a plan that protects poor quality metal!

41.    On September 4, 2012, a consumer posted on Facebook:[4]



So....having our LG washer which is only 15 months old looked at because it is rusting out by the bleach dispenser and displays error messages almost every load. Come to find out the company considers rust a cosmetic defect and won't fix it after 12 months. Machine has been a piece of crap since day one. Next washing machine will be old school- no electronics or bells and whistles. Maybe the it will last more than a year and actually work. Nice way to waste half a day. At least the repair man whistled on tune. That would have pushed me to the brink.

---

[3] Tracey of Lorton, VA, *LG Washing Machines Consumer Reviews and Complaints*, CONSUMER AFFAIRS (Apr. 17, 2012), https://www.consumeraffairs.com/homeowners/lg_washing_machine.html?page=4 6.

[4] Casey Etter-Bob, FACEBOOK (Sept. 4, 2012), https://www.facebook.com/casey.etter/posts/10151219006020185.

42.    On October 4, 2012, a consumer posted directly onto LG's verified Facebook page, and LG representatives replied in a comment:[5]



**Lisa Zarbo Prowse ▸ LG Electronics USA** ✓
October 4, 2012 · Wakefield, MA · 🌐

So Funny how I have had so many problems with my washer. Thank God I bought the extended warranty since the clutch and the stator went. Have to wait until the 9th to get my washing machine fixed thus making it almost 3 weeks that I have had to wait to get service. However, I have been speaking with a LG service team member who promised to extend my LG warranty and actually have somebody come out today to look at my rusted cover that started rusting around the bleach dispenser one month after owning it. Called LG after owning it only 3 months with a complaint about the rust and they did nothing about it. Well here we are on the 4th of October and I was promised by an LG respresentative that somebody would be out to fix the problem. Well the company has no case number and has no idea about this problem so this rep. either lied to me to shut me up or she picked one hell of an unprofessional company who is suppose to fix the top of my washing machine. Oh, by the way, it is a LG Wave Series. I went on many websites and found that there are quite a lot of these problems with the top rusting out amoungst other issues. I will never, ever buy an LG again. Thanks again LG for all your help! Not!!!! Very disappointed in your company

4 Comments

 Share

View 2 more comments

 **Lg Advocacy** We understand your frustration and will reach out to you with information asap.

5y

 **Ronald Whisenhunt** Same here, rust around the bleach dispencer also, while cleaning area found massive rust that flakes off half way around the top of washer. Top it off called customer service and the woman actually tried to blame us for the rust.

5y

---

[5] Lisa Zarbo Prowse, FACEBOOK (Oct. 4, 2012), https://www.facebook.com/LGUSA/posts/424088030974070.

43.    On September 12, 2013, a consumer posted on Amazon regarding her top-loading washer:[6]

## Customer Review

 Rusting!!!

By Kimberly Wyse on September 12, 2013

we purchased our top loader LG washer dryer set in January of 2012 and recently noticed rust around the bleach dispenser try. We also see rust starting to form around the edge of the glass lid. we did nothing about it to begin with because we thought it might be from iron in our water. Although we use an anti-iron water-treater, It's gotten much worse. We looked it up online today only to discover that many others have had the same problem. We are very careful to leave the lid open whenever the washer is wet and to keep the washer clean. The rust is unacceptable.

8 people found this helpful



44.    Consumers also posted complaints regarding rust directly on LG's website.

45.    Consumer complaints, however, did not cease in 2012. On the contrary, consumers have only continued to voice their frustration with the Defect.

46.    On April 23, 2014, a consumer reviewed her LG washer on Amazon:[7]

---

[6] Kimberly Wyse, *Customer Review LG WT5101HV*, AMAZON (Sept. 12, 2013), https://www.amazon.com/gp/customer-reviews/R3NM8J3L0DON2E/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B003DY7TWW.

[7] Whitty, *Customer Review LG WT5101HV*, AMAZON (Apr. 23, 2014),

## Customer Review

⭐☆☆☆☆ **RUSTS AND SHAKES!! DO NOT BUY!!**

By Whitty on April 23, 2014

The WT510HV washing machine has a major design flaw concerning rust and now I find out it has been also recalled for violently shaking.

My problem right now is the rust -- which started at less than a year! At first I thought the issue was only dealing with the bleach cup area. But as I read online other customers who have had the same issue, I realized that the design flaw is much larger causing the whole underneath of the top part of the unit to rust. This is just unacceptable for a high-end washer that performs so well in all other areas. I didn't pay close to $1000 for a high-end machine that rusts!

The response of LG's customer service reps to this particular problem are inappropriate to say the least. I contacted LG three times, twice via online chat and once on the phone. The online reps were constantly telling me the issue is not a part of the warranty. No kidding – I already figured that out before I called as I had purchased the extended warranty via Home Depot who specifically said to me it was a design flaw not covered by the warranty. The customer service rep on the phone fared worse as she actually suggested that the fault was my own for not pouring the bleach in correctly and that I should use touch up paint or pay for a replacement of the bleach cup by a technician. Only after stating that I would not accept those terms as I had proof that other customers were experiencing the same issue and that LG resolved their issues free of charge, she put me on hold long time, at least fifteen minutes and then directed me to fill out this online complaint form.

DO NOT BUY THIS MACHINE!

5 people found this helpful

47.    On June 29, 2015, another consumer posted directly onto LG's verified Facebook page, and LG replied in the comments:[8]

---

https://www.amazon.com/gp/customer-reviews/RLY0MZQ4B30AY/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B003DY7TWW.

[8]    Melanie    Goddard    Korte,    FACEBOOK    (June    29,    2015), https://www.facebook.com/LGUSA/posts/851499948232874.





**Melanie Goddard Korte** ▶ **LG Electronics USA** ✔
June 29, 2015 · 🌐

Our almost three year old LG washer is rusted out on the inside and dropping rust into the tub. Customer service said its "cosmetic." Wish I could post photos. Would never buy another LG ANYTHING!!!! Can't believe we wasted nearly $1000 on such a cruddy product, and clearly customer service is a joke. For the record, they told me they wouldn't have covered it even within the first year because they don't ever cover rust. Yeah, buyer BEWARE.

1 Like  3 Comments

**LG Electronics USA** ✔ Please send us a private message with your case details, Melanie. We hate that you are having these troubles and would love to look into this for you. ^RW

2y

48.    On May 1, 2016, a consumer posted on ConsumerAffairs.com:[9]

---

[9]    *LG Washing Machines Reviews*, Consumer Affairs (May 9, 2016), https://www.consumeraffairs.com/homeowners/lg_washing_machine.html?page=1 6.



 **Stephani of Anycity, LA**     ✓ Verified Reviewer

Original review: May 1, 2016

I will never...I repeat, NEVER buy any LG appliance again. The top-loading HE washer I bought 2 years ago (Model WT4870C) has been nothing but a disappointment. To call it a piece of junk would be an insult to junk. And LG customer service is terrible! Don't think you will get any sympathy or help from the company. They've got your money, and that's all they care about. Apparently, quality means nothing to them. First of all, the area around the bleach dispenser rusted. Do you want rust on your clothes? Me either. That's why I called customer service. Instead of agreement that rust in a washing machine is not acceptable, I was told, "If liquid gets on the metal, it can rust." Really? Then why does it say to put liquid bleach there (in the dispenser!) if no liquid is supposed to touch it? And besides, in their opinion, the rust "is a cosmetic issue."



**VIEW MORE** ⌄

👍 **HELPFUL**  |  **10 people** found this review helpful

49.     On October 6, 2016, a consumer posted on PissedConsumer.com:[10]

---

[10] *LG Electronics – LG Washing Machine Rusting in LESS than 2 Years*, PISSEDCONSUMER (Oct. 6, 2016), https://lg-electronics.pissedconsumer.com/lg-washing-machine-rusting-in-less-than-2-years-20161006931975.html.

⊘ Murfreesboro, Tennessee    Oct 06, 2016

★★☆☆☆  2.5  Details                              5 comments

Bought a new LG Washer and Dryer, Washer model WT5001CW in 2011. In LESS than 2 years, rust began to develop around the bleach dispenser.

I do not use bleach in my clothes, only as directed to clean the machine monthly. I contacted their customer service and the rep read a script that rust was not covered. I asked her whether she felt that was acceptable to have the machine rust in less that 2 years. She had to put me on hold, then came back and answered "YES" that was NORMAL!!!!

SERIOUSLY LG???? I also purchased the extended warranty and was told RUST was not covered. My old Kenmore lasted 25 years without ANY issues. Lots of complaints on the web about it so they know their product is defective, yet choose not to support their products or customers.

I received an email to review the product and made my review to the company, stating the same as I am here and received an email back saying they REJECT MY REVIEW (see pic).

I will NEVER buy LG and nor will anyone I know if I can help it. Attaching pictures of the rusted machine...keep trying to cover with enamel white paint to stop the rust but it has eaten into the metal at this point.

Review about: Lg Electronics Wt5001cw Washing Machine.

Reason of review: Damaged or defective.

Monetary Loss: $800.

Preferred solution: Let the company propose a solution.

I didn't like: Product rusted and company said this is normal.

50.    These complaints show that LG had knowledge of the defect as early as 2012 and certainly by 2013, 2014, and later. Further, these complaints demonstrate that this is a widespread defect.

**C. LG Knowingly Markets and Sells its Defective washers**

51.    LG advertises and sells its washers knowing that they contain a latent manufacturing defect that will cause excessive rusting, which cuts years off of the useful life of the washers.

52.    LG represents consumers can "COUNT ON IT: When you buy a

washer, you want something reliable that you can count on."[11]

53.    As noted above, LG has stated, and knows its consumers expect, that the non-functional parts of a washer should last for at least a decade or more. Yet, despite knowing that its washers contained a manufacturing defect that causes them to prematurely rust and ruin clothes, LG never disclosed this defect to consumers. If LG had fairly represented its washers or disclosed the Defect, Plaintiffs and members of the putative class would not have purchased their washers or would have paid significantly less for them.

## IV.    THE PARTIES

### A. Plaintiffs

i.    Plaintiff Daniel Schwartz

54.    Mr. Daniel Schwartz is a citizen of California.

55.    On May 25, 2013, Mr. Schwartz purchased an LG washer, model number WT5070CW, bearing serial number 304KWQW09244. Mr. Schwartz paid

---

[11] *See, e.g.*, *Model WT5270CW*, LG, http://www.lg.com/us/washers/lg-WT5270CW-top-load-washer (last visited June 12, 2018); *Model WT5480CW*, LG, https://web.archive.org/web/20141006162225/http://www.lg.com:80/us/washers/lg-WT5480CW-top-load-washer (archiving LG's webpage for model WT5480 as of Oct.    6,    2014); *Model    WT5070CW*,    LG, https://web.archive.org/web/20130504052722/http://www.lg.com:80/us/washers/lg-WT5070CW-top-load-washer (archiving LG's webpage for model WT5070CW as    of    May    4,    2013); *Model    WT7600HWA*,    LG, https://web.archive.org/web/20161201134938/http://www.lg.com:80/us/washers/lg-WT7600HWA-top-load-washer (archiving LG's webpage for model WT7600HWA as of November 9, 2016).

nearly $900 for his washer.

56.     Prior to purchase, Mr. Schwartz conducted internet research and reviewed LG's website, LG specifications, consumer reports, LG's information available at Home Depot, an article in the newspaper regarding washers, and LG information guaranteeing the motor for ten years. Had the Defect been disclosed, Mr. Schwartz would not have purchased his washer or would have paid substantially less for it.

57.     In February 2017, however, Mr. Schwartz noticed rust around his bleach dispenser.

58.     The rust has aggressively deteriorated Mr. Schwartz's washer, as shown in the below picture of his washer:



59.     On February 22, 2018, Mr. Schwartz called LG customer service and attempted to submit a warranty claim. The LG representative declined to assist Mr. Schwartz under warranty. The representative stated that the washer was out of warranty and that Mr. Schwartz would be required to pay for all costs to repair his washer. The repair, however, would have merely provided only a temporary fix.

60.     On April 3, 2018, Mr. Schwartz, through his counsel, sent a demand letter and warranty claim, individually and on behalf of all similarly situated consumers, to LG via certified mail. The letter described, *inter alia*, Mr. Schwartz's defective washer, specifically enumerated LG's conduct that violated the CLRA, and demanded appropriate relief.

61.     If unrepaired, the rust on Mr. Schwartz's washer will continue to grow, stain his laundry, and render his washer useless.

ii.   Plaintiff Farrah Gilbert

62.     Ms. Farrah Gilbert is a citizen of Missouri.

63.     On November 15, 2014, Ms. Gilbert purchased an LG washer, model number WT5480CW, bearing serial number 409PNBM07197 from a Home Depot in Springfield, Missouri. Ms. Gilbert paid $1,577.32 for her LG washer.

64.     Prior to purchasing her washer, Ms. Gilbert priced LG washers online and visited HomeDepot where she reviewed LG's product information and discussed models with a sales representative. Had LG disclosed the Defect, Ms. Gilbert would not have purchased her LG washer or would have paid substantially less for it.

65.     In October 2017, however, Ms. Gilbert was washing a new outfit for a special occasion, but at the end of the wash cycle she disappointedly noticed that her clothing had an orange/brown stain on her new pair of paints—the cause of which was unknown to Ms. Gilbert.

66.     On February 26, 2018, Ms. Gilbert extensively cleaned her washer, as she takes routine care of her appliances. During this cleaning, Ms. Gilbert discovered a significant amount of rust beneath the plastic bleach dispenser. Ms. Gilbert then realized that this rust, hidden beneath the bleach dispenser, was the

cause of her soiled laundry.

67.     Because Ms. Gilbert's washer stains her clothing rather than washing it, her washer is not fit for ordinary use.

68.     The picture below shows just a portion of the rust on Ms. Gilbert's washer:



69.     On May 25, 2018, Ms. Gilbert, through her counsel, sent a demand letter and warranty claim, individually and on behalf of all similarly situated consumers, to LG via certified mail. As of the date this complaint was filed, LG has not responded to Ms. Gilbert's demand and warranty claim.

70.     If unrepaired, the rust on Ms. Gilbert's washer will continue to grow

and to stain her laundry.

iii. <u>Plaintiff JoAnn Acosta</u>

71.    Ms. Acosta is a citizen of California.

72.    On November 10, 2016, Ms. Acosta purchased an LG washer, model number WT7600HKA and bearing serial number 609KWRE88166, and an LG dryer from a HomeDepot in Santa Maria, California for $1,875.33.

73.    Prior to purchase Ms. Acosta, along with her husband, researched and compared washers online. Ms. Acosta also visited HomeDepot and Sears where she saw and reviewed LG product information on the washers. Ms. Acosta also talked to Sears and HomeDepot Representatives regarding LG and other washers. Had LG disclosed the Defect, Ms. Acosta would not have purchased her washer or would have paid significantly less for it.

74.    In January 2018, Ms. Acosta noticed that her washer was rusting around the bleach dispenser. The rust has continued to deteriorate the washer around the bleach dispenser and has caused the paint and finish to bubble.

75.    In July 2018, Ms. Acosta contacted LG via email in an attempt to submit a warranty claim. LG denied her request and, instead, blamed Ms. Acosta for the Defect. LG indicated that the Defect was caused by Ms. Acosta's lack of adequate maintenance. Ms. Acosta, however, routinely cleans her washer. In any event, no amount of maintenance could prevent the Defect, which was present

from manufacture with the use of substandard materials.

76.    On September 6, 2018, Ms. Acosta, through her counsel, sent a demand letter and warranty claim, individually and on behalf of all similarly situated consumers, to LG via certified mail. The letter described, *inter alia*, Ms. Acosta's defective washer, specifically enumerated LG's conduct that violated the CLRA, and demanded appropriate relief.

77.    If unrepaired, the rust on Ms. Acosta's washer will continue to grow, stain her laundry, and render her washer useless.

## B. Defendant

78.    Defendant LG Electronics USA, Inc. is a Delaware corporation that sells home appliances, mobile communications devices, and other electronics in the United States. LG's primary corporate offices are located at 1000 Sylvan Avenue, Englewood Cliffs, NJ, 07632. Defendant maintains a website at www.LG.com/us. Defendant markets, distributes, and sells its washers throughout the United States. Upon information and belief, all significant decision concerning the design, marketing, and sale of the washers at issue were made at Defendant's New Jersey headquarters.

## D. Plaintiffs' Demand and Warranty Letters

79.    A noted above, on April 3, 2018, Mr. Schwartz sent a demand letter and warranty claim, individually and on behalf of all similarly situated consumers,

to LG via certified mail. The letter described, *inter alia*, Mr. Schwartz's defective washer, specifically enumerated LG's conduct that violated the CLRA, and demanded appropriate relief. Mr. Schwartz's demand letter is attached hereto as Exhibit A.

80.     On April 12, 2018, a representative from LG called Plaintiffs' counsel and stated that it was in receipt of Mr. Schwartz's letter. Although indicating that the appropriate LG representatives would contact Plaintiffs' counsel shortly, LG has not since contacted Plaintiffs' counsel regarding the letter.

81.     On May 25, 2018, Ms. Gilbert noticed LG of its violations of Missouri law and submitted a warranty claim. Ms. Gilbert also demanded that LG repair or replace Ms. Gilbert's and all similarly situated consumers' washers pursuant to LG's warranty obligations.

82.     On September 6, 2018, Ms. Acosta, through her counsel, sent a demand letter and warranty claim, individually and on behalf of all similarly situated consumers, to LG via certified mail. The letter described, *inter alia*, Ms. Acosta's defective washer, specifically enumerated LG's conduct that violated the CLRA, and demanded appropriate relief. This letter is attached hereto as Exhibit B.

83.     As of the date of the filing of this complaint, LG has neither responded to Ms. Gilbert's May 25, 2018 letter nor Ms. Acosta's September 6, 2018 letter.

## V.    LG's Limited Warranty

84.    LG's Washing Machine Limited Warranty (USA) ("Warranty") states: "LG Electronics U.S.A., Inc. ("LG") warrants your LG Washing machine ('product') against defect in materials or workmanship under normal household use, during the warranty period set forth below, LG will, at its option, repair or replace the product."

85.    Importantly, the express warranty against defects in materials or workmanship covers the entire "product" during the warranty period. It is not limited only to specified parts of the product.

86.    However, in specifying the warranty period, the warranty lists specific component parts:

WARRANTY PERIOD:

| Period | One (1) year from date of original retail purchase: | Ten (10) years from date of original retail purchase: | Lifetime from date of original retail purchase: |
|---|---|---|---|
| Scope of Warranty | Any internal /functional Parts & Labor | Drum Motor (Stator, Rotor, and Hall Sensor) | Stainless Steel Drum |
| Remark | LG will provide parts & labor to repair or replace defective parts. | Parts only. Customer will be responsible for any labor or in-home service to replace defective parts. | |

87.    The warranty includes three distinct warranty periods measured from the date of purchase.

88.    First, there is a one-year period for "any internal/functional Parts &

32

Labor."

89.     Second, there is a ten-year period for "Drum Motor (Stator, Rotor)," and it is limited to parts only.

90.     Third, there is a lifetime period on the "Stainless Steel Drum," and it is limited to parts only.

91.     The Defect, however, does not fall within any of these three categories. Specifically, the main top and its inadequate material is neither: (1) an internal/functional part; (2) a drum motor; or (3) stainless steel drum.

92.     Since the entire product is covered by the warranty, but the warranty does not specify a time period for the Defect, the Court must imply a reasonable time.

93.     With respect to implied warranties, the Warranty states that, to the extent not disclaimed, "ANY IMPLIED WARRANTY . . . IS LIMITED IN DURATION TO THE TERM PERIOD EXPRESSED ABOVE." There are three different term periods specified, however. Any ambiguity must be construed against LG.

94.     Moreover, because LG knowingly failed to disclose a material defect, and offered only a take-it-or-leave it warranty, all limitations in the Warranty are unenforceable as unconscionable. Prior to the time of sale, LG knew that its washers were manufactured with inadequate materials, which were not rust

resistant. LG knew that its washers would prematurely rust and render the washers useless well before the end of their useful life. Notwithstanding its knowledge, LG continued to sell defective washers, and customers unknowingly agreed to a grossly one-sided, warranty contract of adhesion, which they had no opportunity to negotiate.

95.    Additionally, LG's Warranty to repair or replace fails of its essential purpose because the contractual remedy is insufficient to make plaintiffs whole and because LG has failed or refused to adequately provide the promised remedies within a reasonable time.

## VI.    CLASS ACTION ALLEGATIONS

96.    Plaintiffs bring this lawsuit, both individually and as a class action, on behalf of similarly situated individuals, pursuant to pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

97.    For Plaintiffs' Claims under the Magnusson-Moss Warranty Act, 125 U.S.C. §§ 2301-2312 (Count I), Plaintiffs seek to certify the following nationwide class (the "Nationwide Class"):

**Nationwide Class**
All original purchasers of LG top-loading washers from 2012 to present.

98.    In addition to Plaintiffs' request for a Nationwide Class under federal law, Plaintiffs seek to certify subclasses for their common law and state statutory claims under California law (the "California Subclass") and Missouri law (the

"Missouri Subclass"):

**California Subclass (represented by Ms. Acosta and Mr. Schwartz)**
All original purchasers in California who purchased an LG top-loading washer from 2012 to present.

**The Missouri Subclass (represented by Ms. Gilbert)**
All original purchasers in Missouri who purchased an LG top-loading washer from 2012 to present.

99.    The Nationwide Class and State Sub-Classes are collectively referred to hereafter as the "Class."

100.    Plaintiffs may seek to certify additional subclasses as the Court would deem appropriate.

101.    Excluded from the proposed Class are the following individuals and/or entities: the Court, all Court personnel involved in the handling of this case, as well as their immediate family members; LG and its subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which LG has a controlling interest; all individuals who timely elect to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions.

102.    **Numerosity:** Upon information and belief, the Class comprises thousands of natural persons throughout the United States and is so numerous that the joinder of all members of the Class is impracticable. While the exact number of

individuals who purchased LG washers can only be ascertained through discovery, the identity of Class members is readily determinable from LG's records.

103.    **Common Questions of Law and Fact Predominate:** There are questions of law and fact common to the Class, which predominate over any individual issues, including:

(a)    Whether and when LG knew or should have known that its washers were manufactured with substandard materials;

(b)    Whether LG knowingly sold washers that had a high propensity to develop rust caused by defects in manufacturing;

(c)    Whether LG's washers were sold with a manufacturing defect;

(d)    Whether a reasonable consumer would consider the Defect or its consequences to be material;

(e)    Whether LG concealed and/or failed to disclose the defective condition of the washers to consumers;

(f)    Whether LG breached express and implied warranties;

(g)    Whether LG was unjustly enriched;

(h)    Whether LG breached consumer protection laws of the States of California and Missouri; and

(i)    Whether Plaintiffs and the Class have sustained monetary losses and, if so, the proper measure of those losses.

104.    **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant's common course of conduct.

105.    **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class.

106.    **Superiority of Class Action:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class is likely in the millions of dollars, the individual damages incurred by each Class member resulting from LG's wrongful conduct are not substantial enough to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying,

inconsistent, or contradictory judgments and would magnify the delay of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendant has acted on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

107.   Given that LG engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

108.   Plaintiffs reserve the right to revise the above class definitions based on facts adduced in discovery.

## VII.   <u>TOLLING OF THE STATUTES OF LIMITATION</u>

109.   <u>Discovery Rule</u>: Plaintiffs' and Class members' claims accrued upon discovery that LG's washers contained a manufacturing defect that caused excessive rust and rendered the washers unfit for their intended purpose. While LG knew and concealed these facts, Plaintiffs and Class members could not and did not discover these facts through reasonable, diligent investigation until after excessive rust developed from the manufacturing defect and learned that the issue was not isolated to their washers.

110.    Fraudulent Concealment Tolling: Any statutes of limitation were and are tolled by LG's knowing and active concealment of the facts set forth herein. LG had a duty to disclose the material defect to Plaintiffs and the Class. Yet, LG intentionally kept Plaintiffs and all Class members ignorant of vital information essential to the pursuit of their claims without any fault or lack of diligence on the part of Plaintiffs. The details of LG's efforts to conceal its above-described unlawful conduct are in their possession, custody, and control to the exclusion of Plaintiffs and Class members and await discovery. Plaintiffs could neither have reasonably discovered these facts nor reasonably discovered that LG failed to disclose material facts concerning the manufacturing defect in LG's washers.

111.    Equitable Tolling: LG took active steps to conceal and misrepresent material facts relating to the manufacturing defect that impaired the washers' quality and useful life. LG's misrepresentations and omissions misled Plaintiffs and the Class concerning their claims. The details of LG's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control to the exclusion of Plaintiffs and Class members and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, and, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

112. <u>Estoppel</u>: LG was and is under a continuous duty to disclose to Plaintiffs and all Class members the material defect and the true character, quality, and nature of its washers. At all relevant times, and continuing to this day, LG knowingly, affirmatively, and actively concealed the defect and the true character, quality, and nature of its washers. The details of LG's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control to the exclusion of Plaintiffs and Class members and await discovery. LG, for example, intentionally misled Plaintiffs and the Class by informing them that the Defect was merely a cosmetic issue not covered by its warranty, but LG knew that the Defect was actually a manufacturing defect provided for under the warranty. Plaintiffs reasonably relied on LG's misrepresentations and active concealment. Based on the foregoing, LG is estopped from relying on any statutes of limitation in defense of this action.

## VIII.  <u>CLAIMS</u>

### <u>COUNT I</u>
**Violation of the Magnuson-Moss Warranty Act ("MMWA")**
**15 U.S.C. §§ 2301 *et seq.***
**(All Plaintiffs, Individually and On behalf of the Nationwide Class)**

113.  Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

114.  Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class.

115.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

116.   LG washers are "consumer products" within the meaning of the MMWA, 15 U.S.C. §2301(1).

117.   LG is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

118.   Plaintiffs are "consumers" within the meaning of the MMWA, 15 U.S.C. §2301(3), because they are persons entitled under applicable state law to enforce against the warrantor the obligation of its express and implied warranties.

119.   The MMWA, 15 U.S.C. §2301(d)(1), provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

120.   LG provided Plaintiffs and Nationwide Class members with a written warranty within the meaning of the MMWA, 15 U.S.C. § 2301(6).

121.   LG breached the express Warranty, as described in more detail herein, by manufacturing washers with materials of substandard quality that are likely to fail prematurely and, further, by failing to adequately repair them as required under the Warranty.

122.   LG breached its implied warranties, as described in more detail herein, by manufacturing washers that are not merchantable nor fit for their

ordinary purpose because they actually soil laundry instead of cleaning the laundry.

123.   As a result of LG's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages.

124.   Plaintiffs and Class members are entitled to recover damages as a result of LG's breach of warranties.

125.   Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees under the MMWA, 15 U.S.C. § 2301(d)(2).

## COUNT II
### Violation of the Song-Beverly Act, Breach of Implied Warranty of Merchantability
### CAL. CIV. CODE §§ 1790 – 1795.8
### (Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)

126.   Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

127.   Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

128.   This cause of action is brought for breach of implied warranties of merchantability and fitness on all new consumer goods sold at retail pursuant to the Song-Beverly Act, CAL. CIV. CODE §§ 1790 – 1795.8.

129.   LG's washers are "consumer goods" within the meaning of CAL CIV. CODE § 1791(a).

130.   Plaintiff and the members of the California Subclass are "buyers" of consumer goods within the meaning of CAL. CIV. CODE § 1791(b).

131.   LG is a "manufacturer" within the meaning of CAL. CIV. CODE § 1791(j).

132.   LG's warranty of merchantability and fitness for a particular purpose arose out of and/or were related to its manufacture of washers that were sold to consumers.

133.   The implied warranty under the Song-Beverly Act was not effectively waived. *See* CAL. CIV. CODE § 1792.3 (requiring a statement of sale "as is").

134.   Moreover, LG did not adequately disclaim the implied warranty of merchantability, and any attempts to exclude or modify the implied warranty were and are unconscionable because LG's warranty is a contract of adhesion, presented solely on a take-it or leave-it basis without an opportunity to negotiate, and provides no remedy for consumers who purchased products that LG knew were defective.

135.   As alleged herein, LG has failed to comply with their obligation under the implied warranties of merchantability and fitness.

136.   LG impliedly warranted its washers were of merchantable quality, passed without objection in the trade, and were fit for their ordinary purpose for which they are used.

137.   Contrary to such implied warranty, LG's washers were not of merchantable quality because they contained a latent manufacturing Defect that caused rust and soiled laundry such that the washers are unfit for their ordinary purpose.

138.   Additionally, LG's washers were not of merchantable quality because they contained a latent manufacturing defect in that the materials LG used in the manufacture were inadequately rust resistant such that the washers would not pass without objection in the trade.

139.   Plaintiffs Acosta and Schwartz and the California Subclass members have been damaged as a result of LG's failure to comply with its warranty obligations. Plaintiffs and the California Subclass are, therefore, entitled to recover damages under the Song-Beverly Act, including damages pursuant to CAL. CIV. CODE § 1794.

140.   LG's breaches of warranty, as set forth above, were willful, which justifies imposition of a civil penalty in an amount not to exceed twice the amount of actual damages. *See* CAL. CIV. CODE § 1794(c).

## COUNT III
**Breach of Express Warranty**
**CAL. COM. CODE § 2313**
**(Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)**

141.   Plaintiffs repeat and reallege the allegations contained above as if

fully set forth herein.

142.    Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

143.    The express limited Warranty provided with LG's washers' warrants "against defect in materials or workmanship under normal household use, during the warranty period set forth below LG will, at its option, repair or replace the product."

144.    The Warranty provides for three different warranty periods: (1) a one-year period for "Any internal/functional Parts & Labor"; (2) a ten-year period for the "Drum Motor (Stator, Rotor)"; and (3) a lifetime warranty for "Stainless Steel Drum."

145.    As noted above, the manufacturing Defect does not unambiguously fall within any of the three warranty periods. Thus, the Court will need to imply a reasonable term and any ambiguity must be construed against the drafter.

146.    The Defect is not mere cosmetic damage because it affects the functionality of the washer. The rust becomes so pervasive that brown liquid, paint chips, and/or other debris flows into the tub during wash cycles and soil laundry.

147.    LG breached the express Warranty to repair or replace defects of material or workmanship by failing and refusing to repair the manufacturing Defect. When Plaintiffs and Class members contact LG requesting warranty repair,

LG routinely refuses to repair the manufacturing Defect, which it is required to repair under the terms of its Warranty.

148.   LG received timely notice regarding the problems at issue in this litigation, and, notwithstanding such notice, it has failed and refused to offer an effective remedy.

149.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any of LG's attempts to limit its express warranties in a manner that would exclude or limit coverage for the manufacturing defect in its washers is unconscionable. LG's Warranties were adhesive and were presented solely on a take-it or leave-it basis, which Plaintiffs and Class members had no opportunity to negotiate. LG possessed superior knowledge of the manufacturing defect in its washers prior to offering the washers for sale. LG concealed and did not disclose the Defect, and LG did not remedy the Defect prior to or after sale. Any effort to otherwise limit liability for the manufacturing defect is null and void.

150.   Additionally, the limited Warranty is unconscionable and fails its essential purpose and operates to deprive Plaintiffs and the California Subclass of substantial value of the washers. LG failed to and/or refused to provide the promised remedies within a reasonable time. The Warranty is a contract of adhesion, presented solely on a take-it or leave-it bases, which Plaintiffs and the California Subclass members had no opportunity to negotiate. Given that LG knew

46

about the defect at the time the washers were sold but failed to disclose it, the Warranty is unconscionable.

151.   Furthermore, the provisions contained in LG's express Warranty that attempt to limit remedies to the exclusion of labor and other expenses incurred in repairing or replacing the defective washers are unconscionable, cause LG's express warranties to fail of their essential purpose, and are, therefore, void.

152.   Plaintiffs Acosta and Schwartz and the California Subclass members suffered damages as a direct and proximate result of LG's breach of express warranties and are, therefore, entitled to damages.

<u>**COUNT IV**</u>
**Violation of California Consumers Legal Remedies Act ("CLRA")**
**CAL. CIV. CODE §§ 1750 - 1785**
**(Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)**

153.   Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

154.   Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

155.   Plaintiffs Acosta and Schwartz and the members of the California Subclass are "consumers" as defined under the CLRA. *See* CAL. CIV. CODE § 1761(d).

156.   Plaintiffs, members of the California subclass, and LG are "persons"

as defined under the CLRA. *See* CAL CIV. CODE § 1761(c).

157.  LG's washers are "goods" as defined under the CLRA. *See* CAL CIV. CODE § 1761(a).

158.  The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE § 1770(a).

159.  As alleged herein, LG made numerous representations and omissions concerning the characteristics, uses, benefits, and quality of the washers that were misleading.

160.  In purchasing the washers that contained the manufacturing defect, Plaintiffs Acosta and Schwartz were deceived by LG's failure to disclose that its washers contained a material manufacturing defect, which would impact the quality and useful life of the washers.

161.  At all relevant times, LG had a duty to disclose the known manufacturing defect because of superior and/or exclusive knowledge of material facts not know to Plaintiffs and the California Subclass.

162.  LG's conduct, as described herein, was and is in violation of the CLRA. LG's conduct violated at least the following enumerated CLRA provisions:

(a)    LG represents that its washers have characteristics, uses, or

benefits that they do not have in violation of section 1770(a)(5);

(b)    LG represents that its washers are of a particular standard, quality, or grade but are of another in violation of section 1770(a)(7);

(c)    LG advertises its washers with the intent not to sell them as advertised in violation of section 1770(a)(9); and

(d)    LG represents that its washers have been supplied in accordance with a previous representation when they have not, which is in violation of section 17770(a)(16)

(e)    LG inserts an unconscionable provision into its warranty in violation of section 1770(a)(19).

163.    Plaintiffs Acosta and Schwartz and the California Subclass have suffered injury in fact and actual damages resulting from LG's material misrepresentations and omissions, including paying an inflated purchase price for the washers.

164.    LG knew, should have known, or was reckless in not knowing of the manufacturing defect in the washers and that the washers were not suitable for their intended use.

165.    The material Defect affects the central functionality of the washers, which are intended to clean soiled laundry.

166.   The facts that LG misrepresented to and concealed from Plaintiffs and the other California Subclass members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the washers or pay a lower price. Had Plaintiffs and the other California Subclass members known about the manufacturing defect and quality of the washers, then they would not have purchased the washers or would have paid substantially less than the price paid.

167.   Plaintiffs have provided LG with notice of its violations of the CLRA pursuant to CAL. CIV. CODE § 1792(a). *See* Exs. A & B. But, LG has failed to make any offer of relief.

168.   LG's fraudulent and deceptive business practices directly and proximately caused Plaintiffs' and the other California Subclass members' injury and damages.

169.   Pursuant to CAL. CIV. CODE § 1780(a), Plaintiffs Acosta and Schwartz seek injunctive relief for LG's violations of the CLRA.

170.   Additionally, pursuant to CAL. CIV. CODE §§ 1780 and 1781, Plaintiffs Acosta and Schwartz, individually and on behalf of the California Subclass, seek compensatory and punitive damages under the CLRA and also to recover attorneys' fees and costs.

## COUNT V
**Violation of the California Unfair Competition Law ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200 – 17210**
**(Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)**

171.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

172.    Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

173.    California's UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business acts or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

174.    LG's conduct, as described herein, was and is in violation of the UCL. LG's conduct violates the UCL in at least the following ways:

(a)    By knowingly and intentionally misrepresenting to and concealing from Plaintiffs and the other California Subclass members that the washers suffer from a manufacturing defect while obtaining money from Plaintiffs and California Subclass members;

(b)    By marketing washers as being functional, reliable, and durable;

(c)    By unfairly selling its washers, through misrepresentation and

omission, that failed during the applicable Warranty period causing substantial injury to consumers, which the consumers could not have avoided;

(d)    By violating federal laws, including the MMWA; and

(e)    By violating other California laws, including CAL. CIV. CODE §§ 1709-1710; 1750-1785; 1790 – 1795.8; and CAL. COM. CODE §§ 2313, 2314.

175.   LG's material misrepresentations and omissions alleged herein caused Plaintiffs and the other California Subclass members to purchase LG's washers. Absent those misrepresentations and omission, Plaintiffs and the other California Subclass members would not have purchased these washers or would not have paid the price they paid.

176.   The material Defect affects the central functionality of the washers, which are intended to clean soiled laundry.

177.   At all relevant times, LG had a duty to disclose the known manufacturing defect because of superior and/or exclusive knowledge of material facts not know to Plaintiffs and the California Subclass.

178.   Accordingly, Plaintiffs and the other California Subclass members have suffered injury in fact, including lost money or property as a result of LG's misrepresentations and omissions.

179.    Plaintiffs, individually and on behalf of the California Subclass, request that this Court enter such order or judgments as may be necessary to enjoin LG from constituting its unfair, unlawful, and/or deceptive practices and to restore Plaintiffs and members of the California Subclass any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement as provided in CAL. BUS. & PROF. CODE § 17203.

## COUNT VI
### Violation of the California False Advertising Law ("FAL")
### CAL. BUS. & PROF. CODE §§ 17500 – 17509
### (Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)

180.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

181.    Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

182.    The FAL states that:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or . . . in any other manner or means whatever, including over the Internet, any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or . . . not to sell that personal property . . . as so advertised.

CAL. BUS. & PROF. CODE § 17500.

183.  LG's representations and omissions regarding the quality, characteristics, useful life, and functionality of its washers were false, misleading, and deceptive.

184.  LG has violated § 17500 because the misrepresentations and omissions regarding the quality, reliability, and functionality of its washers as set forth in this Complaint were material and likely to deceive a reasonable consumer.

185.  At all relevant times, LG had a duty to disclose the known manufacturing defect because of superior and/or exclusive knowledge of material facts not know to Plaintiffs and the California Subclass.

186.  LG's misrepresentations and omissions were intended to, and did, deceive reasonable consumers, including Plaintiffs and the members of the California Subclass.

187.  Plaintiffs Acosta and Schwartz and the California Subclass relied on the false and misleading misrepresentations and omissions, which played a substantial part in influencing their decision to purchase LG's washers at a premium price.

188.  The material Defect affects the central functionality of the washers, which are intended to clean soiled laundry.

189.  At the time LG made and disseminated the representations and omissions alleged here, LG knew, or should have known, that the statements or

omissions were untrue and misleading and acted in violation of the FAL. *See* CAL. BUS. & PROF. CODE §§ 17500-1509.

190. Plaintiffs Acosta and Schwartz and the members of the California Subclass suffered an injury in fact, including the loss of money or property, as the direct and proximate result of LG's false and misleading representations and omissions. LG's representations and omission were untrue because the washers contained a manufacturing defect that substantially decreased the useful life, quality, and nature of the washers rendering them unfit for their intended purpose. Had Plaintiffs and the California Subclass members known this, they would not have purchased LG washers or would have paid substantially less for them.

191. Plaintiffs Acosta and Schwartz, on behalf of themselves and the California Subclass, seek restitution, disgorgement, injunctive relief, and all other relief provided under the FAL, CAL. BUS. & PROF. CODE §§ 17500-1509.

## COUNT VII
### California Negligent Misrepresentation
### (Plaintiffs Acosta and Schwartz, Individually and On Behalf of the California Subclass)

192. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

193. Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

194. As a manufacturer of a product sold to consumers, LG had and

continues to have a duty to disclose to Plaintiffs and the California Subclass the actual quality of LG's washers and the Defect alleged herein.

195.  LG negligently and/or recklessly misrepresented, omitted, and concealed from Plaintiffs and California Subclass material facts relating to the quality of LG's washers and the materials used to manufacture them. Specifically, LG knew, but failed to disclose, that within just a few years the washers would develop extreme rust around the bleach dispenser that renders the washers useless.

196.  The misrepresentations, omissions, and concealments complained of herein were negligently or recklessly made to potential purchasers and the general public on a uniform and market-wide basis. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the California Subclass have been damaged, as alleged herein.

197.  As alleged above, in deciding whether to spend hundreds or thousands of dollars and pay a premium price for LG's new washers, Plaintiffs reviewed and relied upon the statements contained in Defendant's marketing materials.

198.  Further, LG failed to disclose the existence of the defect in any marketing material or other publicly available disclosures. Had Defendant disclosed the material defect, Plaintiffs and the California Subclass would not have purchased the defective washers or would have paid substantially less for them.

199.  Based on such reliance, Plaintiffs and the California Subclass

purchased LG's washers and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

200. Plaintiffs and the California Subclass are also entitled to damages and injunctive relief as claimed below.

**COUNT VIII**
**California Fraudulent Concealment**
**(Plaintiffs Acosta and Schwartz, Individually and On Behalf Of the California Subclass)**

201. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

202. Plaintiffs Acosta and Schwartz bring this claim on behalf of themselves and on behalf of the California Subclass.

203. Plaintiffs allege that Defendant intentionally suppressed and concealed the Defect, or acted with reckless disregard for the truth, and denied Plaintiffs and the California Subclass information that was highly relevant to their purchase decision.

204. Defendant further affirmatively misrepresented to Plaintiffs and the California Subclass, including in standard and uniform material, that the systems would perform and operate properly under normal usage.

205. Defendant knew or recklessly disregarded that these representations and omissions were false or misleading, yet LG made such representations and omissions to induce Plaintiffs and the California Subclass members into

57

purchasing its washers.

206.  LG's washers that Plaintiffs and the California Subclass members purchased were, in fact, defective because of the manufacturing defect alleged herein.

207.  LG had a duty to disclose that their washers were defective, unreliable, and essentially rendered inoperative due to the manufacturing Defect and because LG had superior and/or exclusive knowledge of the manufacturing defect, which was unknowable to Plaintiffs and the California Subclass.

208.  The aforementioned concealment was material because if it had been disclosed, Plaintiffs and the California Subclass would not have bought the defective washers or not would have bought them at the premium price paid.

209.  The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing a new washer. LG knew or recklessly disregarded that their representations were false because it knew that in order for it to sell its defective washers, LG would need to conceal the defect and intentionally make the false statements.

210.  Plaintiffs relied on LG's omissions and affirmative misrepresentations about the reliability, useful life, and quality of the washers in purchasing their washers.

211.  As a direct proximate result of LG's conduct, Plaintiffs and the

California Subclass have been injured in an amount to be proven at trial.

212.   LG's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the California Subclass. Plaintiffs and the California Subclass are therefore entitled to an award of punitive damages.

### COUNT IX
### California Unjust Enrichment
### (Plaintiffs Acosta and Schwartz, Individually and on Behalf of the California Subclass)

213.    Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

214.   Plaintiffs bring this claim on behalf of themselves and on behalf of the California Subclass. This claim is pled in the alternative to the other claims set forth herein.

215.   As the intended and expected result of its conscious wrongdoing, LG has profited and benefited from Plaintiffs' and the California Subclass members' purchases of its washers containing the Defect.

216.   LG retained and appreciated these profits and benefits with full knowledge and awareness that, as a result of LG's misconduct alleged herein, Plaintiffs and the California Subclass members were not receiving the washers of the quality, nature, fitness, or value that LG had represented and that a reasonable consumer would expect.

217.  LG has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of its top-loading washers at the expense of the Plaintiffs and California Subclass members.

218.  Plaintiffs purchased the LG washers from LG's agents, in part, because of LG's advertisements, marketing, and product claims, and as a result, a relationship between the parties has been created even though Plaintiffs did not purchase LG washers directly from LG.

219.  Equity and good conscience militate against permitting LG to retain these profits and benefits, and LG should be required to make restitution of its ill-gotten gains resulting from its conduct alleged herein.

## COUNT X
### Missouri U.C.C. Breach of Implied Warranty
### MO. REV. STAT. 400.2-314
### (Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)

220.  Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

221.  Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass.

222.  LG's washers are "goods" under MO. REV. STAT. § 400.2-105(1).

223.  LG is a merchant with respect to its washers. *See* MO. REV. STAT. §§ 400.2-104(1), 400.2-314(1).

224.  At the time LG manufactured, produced, tested, inspected, marketed,

advertised, and sold its washers for use by Plaintiff Gilbert and the Missouri Subclass members, LG knew of the use for which the washers were intended.

225.  LG impliedly warranted its washers were of merchantable quality, passed without objection in the trade, and were fit for their ordinary purpose for which they are used. *See* MO. REV. STAT. 400.2-314.

226.  Contrary to such implied warranty, LG's washers were not of merchantable quality because they contained a latent manufacturing Defect that caused rust and soiled laundry such that the washers are unfit for their ordinary purpose.

227.  Additionally, LG's washers were not of merchantable quality because they contained a latent manufacturing defect in that the materials LG used in the manufacture were inadequately rust resistant such that the washers would not pass without objection in the trade.

228.  LG did not adequately disclaim the implied warranty of merchantability, and any attempts to exclude or modify the implied warranty were and are unconscionable because LG's warranty is a contract of adhesion, presented solely on a take-it or leave-it basis without an opportunity to negotiate, and provides no remedy for consumers who purchased products that LG knew were defective.

229.  As a direct and proximate result LG's breaches of the implied

warranty of merchantability, Plaintiff Gilbert and members of the Missouri Subclass have incurred and will continue to incur damages and losses as alleged herein.

**COUNT XI**
**Missouri U.C.C. Breach of Express Warranty**
**MO. REV. STAT. § 400.2-313**
**(Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)**

230.   Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

231.   Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass.

232.   The express limited Warranty provided with LG's washers warrants "against defect in materials or workmanship under normal household use, during the warranty period set forth below LG will, at its option, repair or replace the product."

233.   The Warranty provides for three different warranty periods: (1) a one-year period for "Any internal/functional Parts & Labor"; (2) a ten-year period for the "Drum Motor (Stator, Rotor)"; and (3) a lifetime warranty for "Stainless Steel Drum."

234.   As noted above, the manufacturing Defect does not unambiguously fall within any of the three warranty periods. Thus, the Court will need to imply a reasonable term, and any ambiguity must be construed against the drafter.

235. The Defect is not mere cosmetic damage because it affects the functionality of the washer. The rust becomes so pervasive that brown liquid, paint chips, and/or other debris flows into the tub during wash cycles and soil laundry.

236. LG breached the express Warranty to repair or replace defects of material or workmanship by failing and refusing to repair the manufacturing Defect.

237. LG received timely notice regarding the problems at issue in this litigation, and, notwithstanding such notice, it has failed and refused to offer an effective remedy.

238. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any of LG's attempts to limit its express warranties in a manner that would exclude or limit coverage for the manufacturing defect in its washers is unconscionable. LG's Warranties were adhesive and were presented solely on a take-it or leave-it basis, which Plaintiffs and Class members had no opportunity to negotiate. LG possessed superior knowledge of the manufacturing defect in its washers prior to offering the washers for sale. LG concealed and did not disclose the Defect, and LG did not remedy the Defect prior to or after sale. Any effort to otherwise limit liability for the manufacturing defect is null and void.

239. Additionally, the limited Warranty is unconscionable and fails its essential purpose and operates to deprive Plaintiff Gilbert and the Missouri

Subclass of substantial value of the washers. LG failed to and/or refused to provide the promised remedies within a reasonable time. The Warranty is a contract of adhesion, presented solely on a take-it or leave-it bases, which Plaintiff Gilbert and the Missouri Subclass members had no opportunity to negotiate. Given that LG knew about the defect at the time the washers were sold, the Warranty is unconscionable.

240.   Furthermore, the provisions contained in LG's express Warranty that attempt to limit remedies to the exclusion of labor and other expenses incurred in repairing or replacing the defective washers are unconscionable, cause LG's express warranties to fail of their essential purpose, and are, therefore, void.

241.   Plaintiff Gilbert and the Missouri Subclass members suffered damages as a direct and proximate result of LG's breach of express warranties and are, therefore, entitled to damages.

## COUNT XII
**Violation of the Missouri Merchandising Practices Act ("MMPA")**
**MO. REV. STAT. §§ 407.010 - .309**
**(Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)**

242.   Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

243.   Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass.

244.   Plaintiff Gilbert, the Missouri Subclass, and LG are "persons" within

the meaning of Mo. Rev. Stat. § 407.010(5).

245.   LG's washers are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

246.   Plaintiff Gilbert and the Missouri Subclass purchased the washers primarily for personal, family, or household purposes. Mo. Rev. Stat. § 407.025.

247.   LG has engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

248.   The MMPA makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.

249.   The MMPA gives injured persons a cause of action and explicitly allows for class actions. Mo. Rev. Stat. § 407.025.

250.   In the course of its business, LG omitted, suppressed, and concealed that its washers were defective as described herein and did so recklessly or with the intent that others rely upon such omissions, concealments, or suppressions in connection with the sale of its washers. By failing to disclose the defect or the facts about the defect described herein known to LG or knowable to them upon a reasonable inquiry, LG deprived consumers, such as Plaintiff Gilbert and the

Missouri Subclass members, of all material facts about the useful life and effectiveness of its washers. LG, therefore, has engaged in activities with the tendency or capacity to deceive. *See* MO. CODE REGS. ANN. tit. 15, § 60-9.110.

251.   That LG's washers contained the Defect was a material fact that a reasonable consumer would consider important in making a purchase decision because it significantly limits the useful life of the washers, causes damage to articles of laundry, and consumers would not have purchased the washers had the defect been disclosed.

252.   Because LG knew or believed that their statements regarding the useful life of its washers were not in accord with the facts and/or had no reasonable basis for such statements in light of their knowledge of the Defect of materials and/or design, LG engaged in fraudulent misrepresentations pursuant to MO. CODE REGS. ANN. tit. 15, § 60-9.100.

253.   LG's conduct as described herein is unethical, oppressive, or unscrupulous. Such acts are unfair practices in violation of MO. CODE REGS. ANN. tit. 15, § 60-8.020.

254.   LG knew or should have known that its conduct violated the MMPA.

255.   LG had a duty to disclose the Defect because of its superior knowledge of the information that was not within the fair and reasonable reach of Plaintiff Gilbert or the Missouri Subclass members; because it intentionally

concealed the Defect from Plaintiff Gilbert and the Missouri Subclass members; and because it made incomplete, false, or misleading representations about the useful life, effectiveness, and quality of its washers while purposefully withholding material facts from Plaintiff Gilbert and the Missouri Subclass members that contradicted these representations.

256.   Because LG's washers are worth far less than paid for by Plaintiff Gilbert and the Missouri Subclass, they have suffered ascertainable loss as a result of LG's deceptive and unfair acts and practices made in the course of LG's business.

257.   As a direct and proximate result of LG's violations of the MMPA, Plaintiff Gilbert and the Missouri Subclass members have suffered injury in fact and/or actual damages.

258.   Pursuant to MO. REV. STAT. § 407.025, Plaintiff Gilbert and the Missouri Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the MMPA.

## COUNT XIII
### Missouri Negligent Misrepresentation
### (Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)

259.   Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

260.    Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass.

261.   As a manufacturer of a product sold to consumers with superior knowledge of the defect not within the reasonable reach of consumers, LG had and continues to have a duty to disclose to Plaintiff and the Missouri Subclass the actual quality of LG's washers and the Defect alleged herein.

262.   LG knowingly, negligently, and/or recklessly misrepresented, omitted, and concealed from Plaintiff and the Missouri Subclass material facts relating to the quality of LG's washers and the materials used to manufacture them. Specifically, LG knew, but failed to disclose, that within just a few years the washers would develop extreme rust around the bleach dispenser, rendering the washers useless.

263.   The misrepresentations, omissions, and concealments complained of herein were knowingly, negligently, or recklessly made to potential purchasers and the general public on a uniform and market-wide basis. As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiff and the Missouri Subclass have been damaged, as alleged herein.

264.   LG made its negligent omissions and representations in the ordinary course of business and was targeted directly at purchasers of its washers.

265.   Plaintiff and the Missouri Subclass members would not have

purchased the LG washers had it disclosed the defect, which was highly material.

266.   As alleged above, in deciding whether to spend hundreds or thousands of dollars and pay a premium price for LG's new washers, Plaintiffs reviewed and relied upon the statements contained in Defendant's marketing materials.

267.   Further, LG failed to disclose the existence of the defect in any marketing material or other publicly available disclosures. Had Defendant disclosed the defect, Plaintiff and the Missouri Subclass members would not have purchased the defective washers.

268.   Based on such reliance, Plaintiff and the Missouri Subclass purchased LG's washers and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

269.   Plaintiff and the Missouri Subclass are also entitled to damages and injunctive relief as claimed below.

## COUNT XIV
### Missouri Fraudulent Concealment
### (Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)

270.   Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

271.   Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass.

272.   Plaintiff alleges that Defendant intentionally suppressed and

concealed the Defect, or acted with reckless disregard for the truth, and denied Plaintiff and the Missouri Subclass members information that was highly relevant to their purchase decision.

273. Defendant further affirmatively misrepresented to Plaintiff and the Missouri Subclass, including in standard and uniform material, that the systems would perform and operate properly under normal usage.

274. Defendant knew or recklessly disregarded that these representations and omissions were false or misleading, yet LG made such representations and omissions to induce Plaintiff and the Missouri Subclass members into purchasing its washers.

275. The LG washers that Plaintiff and Missouri Subclass members purchased were, in fact, defective because of the manufacturing defect alleged herein.

276. LG had a duty to disclose that their washers were defective, unreliable, and essentially rendered inoperative due to the manufacturing Defect and because LG had superior and/or exclusive knowledge of the manufacturing defect, which was unknowable to Plaintiff and the Missouri Subclass.

277. The aforementioned concealment was material because if it had been disclosed, Plaintiff and the Missouri Subclass would not have bought the defective washers or would not have bought them at the premium price paid.

70

278.   The aforementioned representations and omissions were material because they were facts that would typically be relied on by a person purchasing a new washer. LG knew or recklessly disregarded that their representations were false because it knew that in order for it to sell its defective washers, LG would need to conceal the defect and intentionally make the false statements.

279.   Plaintiff relied on LG's omissions and affirmative misrepresentations about the reliability, useful life, and quality of the washers in purchasing their systems.

280.   As a direct proximate result of LG's conduct, Plaintiff and the Missouri Subclass have been injured in an amount to be proven at trial.

281.   LG's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the Missouri Subclass. Plaintiff and the Missouri Subclass are, therefore, entitled to an award of punitive damages.

## COUNT XV
### Missouri Unjust Enrichment
### (Plaintiff Gilbert, Individually and On Behalf of the Missouri Subclass)

282.    Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

283.   Plaintiff Gilbert brings this claim individually and on behalf of the Missouri Subclass. This claim is pled in the alternative to the other claims set forth

herein.

284.   As the intended and expected result of its conscious wrongdoing, LG has profited and benefited from Plaintiff's and Class members' purchases of its washers containing the Defect.

285.   LG retained and appreciated these profits and benefits with full knowledge and awareness that, as a result of LG's misconduct alleged herein, Plaintiff and the Missouri Subclass members were not receiving the washers of the quality, nature, fitness, or value that LG had represented and that a reasonable consumer would expect.

286.   LG has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of its top-loading washers at the expense of the Plaintiff and the Missouri Subclass members.

287.   Plaintiff purchased the LG washer from LG's agents, in part, because of LG's advertisements, marketing, and product claims, and as a result, a relationship between the parties has been created even though Plaintiff did not purchase her LG washers directly from LG

288.   Equity and good conscience militate against permitting LG to retain these profits and benefits, and LG should be required to make restitution of its ill-gotten gains resulting from its conduct alleged herein.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

    (a)    Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Federal Rule of Civil Procedure 23 and Plaintiffs' counsel as Class Counsel;

    (b)    Ordering injunctive relief;

    (c)    Awarding of all actual, general, special, incidental, statutory, treble or multiple, punitive and consequential damages to which Plaintiffs and Class members are entitled;

    (d)    Awarding of pre-judgment and post-judgment interest on such monetary relief;

    (e)    Awarding of restitution in an amount according to proof;

    (f)    Awarding Plaintiffs and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    (g)    Such other and further relief as the Court may deem just and proper.

## X.    JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: November 1, 2018                    Respectfully submitted,

                                    By: */s/ Timothy N. Mathews*
                                            Timothy N. Mathews
                                            Benjamin F. Johns
                                            Zachary P. Beatty (*pro hac vice to be
                                            sought*)
                                            **CHIMICLES & TIKELLIS LLP**
                                            One Haverford Centre
                                            361 West Lancaster Avenue
                                            Haverford, PA 19041
                                            Phone (610) 642-8500
                                            Facsimile (610) 649-3633
                                            tnm@chimicles.com

                                            *Counsel for Plaintiffs and Proposed
                                            Lead Class Counsel*